PHILIP BRANNEN *vs.* ATLAS PLYWOOD CORPORATION.

Aroostook.        Opinion January 13, 1931.

R. W. Shaw,
A. S. Crawford, Jr., for plaintiff.
Herbert T. Powers,
Cook, Hutchinson, Pierce & Connell, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, THAXTER, JJ.

BARNES, J. On exception to the admission of a scale bill and on
general motion by defendant, after verdict for plaintiff in a suit on
account annexed for work and labor in cutting and delivering logs.

The contract was oral, for delivery of not less than 500,000 feet
of logs; and delivery of more than 500,000 feet of logs acceptable
to defendant was admitted.

There was dispute as to price per M, as to quantity delivered, as
to percentage of the total delivered which might scale less than
twelve inches at the top, and as to the scale to be used as the basis
for settlement.

Two agents of defendant agree that the timber was to be paid
for according to the scale at the mill. One testifies that the name of
the scaler at the mill was given when the contract was made. This
the plaintiff denies; and he insists that, with full knowledge he must
pay to the owners of the land where the logs were to be cut for all
merchantable logs he should cut, it was agreed on the part of de-
fendant, by one of the agents, at the office of the latter, in New
Limerick, that the land owners' scale, the stumpage scale, would be
considered in settlement.

Plaintiff testified to the following conversation on this point,
"Speaking about the scale, I think just before I went the last time
he said, 'What about the scale?' I said that I didn't care who scaled
it as long as I got ten hundred feet for a thousand; that I couldn't
buy 500,000 and sell it for 400,000. And he said 'I know it, and I'll
stand between you and the stumpage scale.' "

In the course of the trial, examination was had as to the stump-
age scale.

Under plaintiff's license to cut the logs in question, as shown by
the license, or permit, admitted as an exhibit, scale which was to
be final between land owners and operator was to be made by a
person to be appointed by the land owners. Plaintiff called and
examined a man who testified that he scaled the first 159 logs of
the 4,000 and more that were delivered to defendant, and this wit-
ness testified that he saw no more of plaintiff's operation, after

scaling these few logs. He testified that the land owners sent another scaler, a Mr. Griffin, to complete the scale.

Plaintiff's counsel offered as Exhibit B a scale bill signed by the witness, tallying 616,008 feet, board measure, as the scale of plaintiff's entire operation.

But the witness testified that at the time of signing this scale bill he knew nothing as to its accuracy; that the figures were given him by a man interested in the business of one of the land owners, and not by any of the scalers who might be considered as under the supervision of the witness as the "head scaler."

At the insistence of this other man, witness testified, "I checked his (the third party's) figures and signed my name to it, which I should not have done."

Said he, "I will say that I didn't know anything about that lumber."

The witness admitted that he set Mr. Griffin to work as scaler for the land owners and told him what to do. But before a so-called head scaler may accept as accurate the findings of an assistant, he must have more knowledge of such assistant's work than would be conveyed by a report submitted by another who is a stranger to the operation. He must be satisfied of the accuracy of the report presented.

Generally speaking his assistants must be of his choice; certainly they must be workmen approved by him.

Generally the head scaler must have seen the assistant at work, in the same or a like operation, in order to satisfy himself that the method of scaling is his own, or what he can approve. Then, "The data obtained by his assistants in their measurements and scale of the logs, and the entries and memoranda thereof made by them, acting under his direction, and inspected, corrected and adopted by him, may be used by the scaler in the determination of the quantity of logs scaled." *Bank* v. *H. & W. Co.*, 106 Me., 326.

But the paper admitted as Exhibit B was not identified as an accurate scale bill.

Its author was not called for that purpose, even though it was testified by the ostensible author that the man who could swear to the assembling of its total could be produced in court that day.

Exhibit B was but hearsay, and as such, admission of it for the consideration of the jury was reversible error, as stated recently by this court in *Edwards* v. *Goodall*, 126 Me., 254.

Not only was the exhibit inadmissible; it seems to be assumed its consideration was prejudicial, for counsel for plaintiff in his brief argues, "The jury evidently took the stumpage scale and deducted 10% . . . and also made other deductions and found for the plaintiff, as the verdict shows."

Some argument for the admission of this exhibit and another is adduced because the Court, in ruling on defendant's objection, said, "They are admitted for what they are worth." This expression is unfortunate.

The question raised by the objection was whether or no, under the rules of evidence prevailing in this jurisdiction, the paper presented was to be read by the jury or to them.

Defendant urges that it was aggrieved by the ruling of the Court, and defendant's contention is sustained.

*Exceptions sustained.*